UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FAIZAH P. SIDDIQUE, | ) |
| Plaintiff, | ) |
| v. | ) No. 22-cv-7198 |
| | ) Judge April M. Perry |
| I.Q. DATA INTERNATIONAL, INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

This case arises from efforts by Defendant I.Q. Data International, Inc. to collect from Plaintiff Faizah Siddique a debt she purportedly incurred in connection with her tenancy at an apartment complex in Lombard, Illinois. After a series of increasingly combative phone calls between the parties, Plaintiff sued Defendant for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). Pending now are the parties' cross-motions for summary judgment on Plaintiff's claims. Doc. 44, 47. Defendant challenges Plaintiff's standing and moves for summary judgment on Plaintiff's claims brought under Sections 1692d, 1692e, and 1692f of the FDCPA and ICFA. Plaintiff cross-moves for summary judgment on her Section 1692e claim only.

The Court's analysis begins and ends with standing. As is discussed in detail below, Plaintiff has not proven injury in fact, and therefore the case must be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

In the Northern District of Illinois, parties that move for summary judgment are required to file a "statement of material facts" to make their argument, which the nonmoving party may

dispute with citation to specific countervailing evidence and their own statement of material facts. Local Rule 56.1(a)-(f); Fed. R. Civ. P. 56(c)(1). As such, the Court's standing analysis benefits from a relatively developed record. Laid out below are the relevant undisputed facts of this case from Plaintiff's response to Defendant's statement of material facts, to which she appended her own statement of material facts in support of her cross-motion for summary judgment, Doc. 48.

In 2020, Plaintiff and her husband were tenants in the Apex apartment complex. Doc. 48 ¶¶ 5-9. From May 2020 until October 2020, they resided there under a month-to-month lease signed with Greystar Worldwide, LLC ("Greystar"), property manager for the complex. *Id.* ¶¶ 6-8. Under the terms of her lease, Plaintiff was required to provide Greystar notice of termination thirty days before vacating her unit. *Id.* ¶ 7. Plaintiff vacated on October 29, 2020, which the parties agree was after the date by which Plaintiff had informed Greystar she would vacate. *Id.* ¶¶ 8-9.

On November 9, 2020, Defendant received Plaintiff's debt for collection. *Id.* ¶ 15. Defendant is a third-party collection agency that sometimes collects debts from consumers for its clients. *Id.* ¶ 2. After Defendant sent a series of letters to Plaintiff regarding her debt, Plaintiff called Defendant on February 9, 2022. *Id.* ¶¶ 16-22, 45. On that call, Plaintiff told Defendant that, based on her interactions with Apex, she did not believe she owed any debt. *Id.* ¶¶ 47-48. Defendant informed her that its account notes indicated her debt arose from her failure to give adequate notice before vacating. *Id.* ¶ 50. Defendant also told her to submit a dispute in writing if she wanted further information. *Id.* ¶ 49. On February 19, 2022, Plaintiff sent a dispute letter to Defendant. *Id.* ¶ 52. Having received no information in response to her February 19 dispute letter, Plaintiff called Defendant to follow up on June 22, 2022. *Id.* ¶ 55-56. On that call,

Defendant explained that the information attached to her written dispute did not demonstrate she provided adequate notice prior to vacating the Apex apartment. *Id.* ¶ 57. On October 18, 2022 and then again on October 31, 2022, Plaintiff and her husband called Defendant to reiterate their case that they did not owe any balance in connection with their departure from Apex, but Defendant was not convinced. *Id.* ¶¶ 61-64. Plaintiff called Defendant a final time on November 4, 2022. *Id.* ¶ 65. The next month, this case was filed. Doc. 1.

The main disputed fact in this case is whether Plaintiff's delayed departure gave rise to a valid debt obligation. Though neither party introduced Plaintiff's lease into the record, Defendant asserts that Plaintiff's failure to vacate by her noticed date triggered an obligation to pay an additional month's rent. Plaintiff admits she did not vacate by her noticed date but disputes that this makes her subject to any legally enforceable debt. Specifically, Plaintiff asserts "she did not owe the debt" Defendant was trying to collect on because "she was told by Apex that there was no balance owed" and that she gave sufficient notice. *Id.* ¶¶ 46-47, 58.

## ANALYSIS

In its motion for summary judgment, Defendant challenges Plaintiff's standing to assert her claims. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The requirement of standing derives from this provision and has three elements: plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "As the party invoking the court's jurisdiction, the plaintiff bears the burden of establishing the elements of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020). At summary judgment, a plaintiff must supply evidence of specific facts that "taken as true, show each element of standing." *Id*. at

3

286. This showing exceeds what Plaintiff would be required to show at the pleading stage, where "a plaintiff may demonstrate standing by clearly pleading allegations that plausibly suggest each element of standing when all reasonable inferences are drawn in plaintiff's favor." *Id*. at 285. Standing is jurisdictional, and without standing the case must be dismissed. *See United States v. Hays*, 515 U.S. 737, 742 (1995).

Only injuries that are sufficiently concrete, particularized, and actual or imminent qualify as injuries in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). A plaintiff unaffected by defendant's supposed misconduct is not injured. *See Spuhler*, 983 F.3d at 286 (plaintiffs lacked concrete injury where evidence showed inaccurate communication from debt collector did not "detrimentally affect[] the debtors' handling of their debts.")

At issue is whether Plaintiff suffered a concrete and particularized injury in this case sufficient to support standing. Here, Plaintiff alleges two injuries. First, Plaintiff points to her sworn testimony that she purchased chamomile tea to relieve the stress brought about by her interactions with Defendant. Second, Plaintiff asserts that she paid $10.90 to mail a written dispute to Defendant, which she claims she only did because Defendant misled her. Doc. 47 at 6-8.

The Court begins with Plaintiff's claimed injury of purchasing chamomile tea. Emotional disturbance—like stress, anxiety, and confusion—are considered "quintessential abstract harms" too lacking in concreteness to confer standing in a case brought under the FDCPA. *Wadsworth v. Kross, Lieberman, & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) ("Being informed of an outstanding debt can sometimes be a stressful experience, but federal courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act."); *see also Pucillo v. Nat'l Credit Sys., Inc.*, 66

4

F.4th 634, 639 (7th Cir. 2023) ("plaintiff must show a harm beyond emotional response, such as an adverse credit rating or detrimental action that the plaintiff took in reliance" on debt collection letters); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (confusion and emotional distress were "insufficient to confer standing" in the FDCPA context). Even sworn testimony that a defendant caused plaintiff distress will not establish the injury element of standing if that stress presents "with no physical manifestations and no qualified medical diagnosis." *Pennell v. Global Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). Nor is standing's injury requirement satisfied by money spent by plaintiffs to clear their own confusion or to soothe their own emotional tumult. *See Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020) (money spent by confused, distressed plaintiffs to hire lawyers does not satisfy Article III standing). Otherwise, "everyone would have standing to litigate about everything." *Id.*; *see also Pierre*, 29 F.4th at 939 (standing's "concreteness requirement would be an empty one if all it took was contacting a lawyer and filing suit'); *Gunn v. Thrasher, Buschmann & Voekel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) ("the Supreme Court never thought that having one's nose out of joint and one's dander up creates a case or controversy").

Plaintiff's purchase of tea does not establish concrete injury for standing purposes. Even accepting as true Plaintiff's testimony that her stressful interactions with defendant led her to buy tea, that purchase does not prove that her stress manifested physically. In fact, Plaintiff admits that she did not seek medical treatment of any kind for her purported stress. Doc. 48 ¶ 38. If the sums spent by "concerned, confused, disturbed, or upset" plaintiffs to hire counsel do not satisfy standing, neither should Plaintiff's tea expenditure. *See Brunett*, 982 F.3d at 1069. To rule otherwise would throw open the door for plaintiffs to transform even the mildest of emotional harms into concrete injury simply by asserting that they spent money to self-soothe by

purchasing scented candles, fuzzy slippers, or crystals. The Court hazards a guess that almost everyone has bought something to make themselves feel better in times of stress or sadness; Article III standing cannot possibly be conferred on the basis of such purchases.

Plaintiff does not present any compelling case law to support her argument that her tea purchase represents concrete injury. As a preliminary matter, none of the cases cited by Plaintiff are binding precedent. But the bigger problem is that none involved a finding of standing based upon a purchase made to relieve anxiety caused by the defendant. *See, e.g., Balistreri v. McCormick & Co,* 2023 WL 5988600, at *4-5 (N.D. Cal. Sept. 13, 2023) (food mislabeling case where plaintiffs alleged they would not have purchased product if they had known it contained unsafe materials); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (home developer fraud case where plaintiffs alleged they paid more for their homes and/or would not have purchased the homes at all had proper disclosures been made); *Reed v. I.Q. Data Int'l Inc.*, 2023 WL 5246356, at *5 (W.D. Tex. Aug. 14, 2023) (denying standing based upon plaintiff's "mental anguish and emotional distress;" granting standing based upon plaintiff's inability to move due to debt being on her credit report). For these reasons, the Court concludes that Plaintiff's purchase of tea is insufficient to establish her standing to bring this case.

Plaintiff also asserts she suffered a concrete injury because Defendant misled her to spend $10.90 on postage to mail Defendant a written dispute letter. Doc. 48 ¶¶ 52-53. Specifically, she argues she only spent money on postage because of misleading representations made by Defendant on a February 9, 2022 phone call. Doc. 47 at 7.

Based upon the undisputed facts presented by the parties, the Court cannot conclude that Defendant's representations on the February 9 phone call misled Plaintiff into paying for postage. Plaintiff has provided a recording of the phone call to the Court. Doc. 60 ("Ex. B"). The

call itself was initiated by Plaintiff, who had received a letter informing her of unpaid charges related to her Apex apartment tenancy. Doc. 48 ¶ 45. Plaintiff began the call by informing Defendant that its letter suggesting that she owed money was not accurate. *Id.* ¶ 46. Plaintiff asked Defendant for more information about who at Apex claimed she had a debt, to which Defendant explained that according to its client, Plaintiff's debt arose from her vacating without providing adequate notice. *Id.* ¶ 50. Plaintiff's immediate response was to ask Defendant whether she could take legal action against Apex if she could prove she gave proper notice and that Apex "messed up." *See* Ex. B. Defendant told Plaintiff to submit a dispute in writing if she wanted further information. *Id*. Plaintiff acknowledges that she never planned to pay the debt and "[n]othing IQ Data could have said to Plaintiff or her husband would have shaken their belief that they did not owe the debt at issue." Doc. 48 ¶¶ 25-26.

When a defendant's supposed misconduct fails to impact a plaintiff's behavior, the plaintiff cannot claim it caused her injury. Recent Seventh Circuit cases are instructive. In *Casillas v. Madison Ave. Assoc.,* 926 F.3d 329, 332 (7th Cir. 2019), plaintiff debtor alleged an FDCPA violation where defendant's communication omitted a statutorily required notice about her right to dispute the validity of a debt. The Seventh Circuit affirmed dismissal of plaintiff's claims for lack of standing, reasoning that she had not alleged even the possibility she would have disputed or verified her debt had defendant included the notice. *Id*. at 334. And in *Spuhler*, the Seventh Circuit found plaintiff debtors lacked standing to assert FDCPA claims premised on collection letters that failed to state interest would accrue on unpaid debts. 983 F.3d at 282. Reversing a grant of summary judgment in plaintiffs' favor, the Seventh Circuit found that due to the absence of any evidence that the omission "detrimentally affected the debtors' handling of their debts," plaintiffs had not established the concrete injury element of standing. *Id*. at 286.

Here, similarly, Plaintiff spent money mailing a letter after her February 9, 2022 call with Defendant, but admits that nothing Defendant said could have caused her to either pay the debt or shake her belief that she owed nothing. Doc. 48 ¶¶ 25-26. Thus, even though Plaintiff spent money to mail her dispute request, it cannot be said that she did so because Defendant misled her. Nor did Defendant's representation put Plaintiff at risk of making any ill-advised debt management decision towards a debt she thought could not be collected on. For these reasons, Plaintiff's postage purchase doesn't qualify as a concrete injury sufficient to establish standing.

The Court's standing conclusion is further supported by *Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395 (7th Cir. 2023). In *Mack*, Plaintiff Yvonne Mack received two collection letters in connection with a credit card debt. The first letter was sent by Frontline Asset Strategies, LLC ("Frontline"), a third-party hired by defendants to collect on the debt. As required under the FDCPA, Frontline's letter instructed Mack that if she wanted to preserve her right to dispute the debt's validity, she should send Frontline a notice of dispute within 30 days or her debt would be presumed valid. In response, Mack spent around $10 to mail Frontline a written dispute. But instead of any responsive information from Frontline, she got a second letter seeking to collect on the same credit card debt. This time, however, the letter was sent by a different company, Resurgent Capital Services, L.P. ("Resurgent"). Like Frontline's letter, Resurgent's letter also instructed Mack that she needed to send a notice of dispute within 30 days or Resurgent would presume her debt's validity. Given she had already sent Frontline a request, Resurgent's letter alarmed Mack and led her to conclude that she needed to send a second validation request to preserve her rights. Mack later brought a class action case asserting FDCPA claims against defendants, who moved to dismiss for lack of standing. The district court granted the motion. On appeal, the Seventh Circuit reversed, reasoning that the money Mack spent to

8

send her first request was an "expected cost" of preserving her rights, given that the FDCPA "requires that the consumer notify the debt collector of the request for validation 'in writing.'" *Id*. at 406. However, the same could not be said of the money Mack spent to mail her second request, which was mailed only due to a misleading communication from a debt collector. *Id*. The Seventh Circuit therefore found Mack established a concrete injury by virtue of the postage spent to mail her second request for validation. *Id*.

Defendant argues *Mack* establishes a brightline rule that postage fees associated with a debtor's first letter to a creditor can never be the basis for standing. Doc. 51 at 3. The Court disagrees that *Mack* goes so far. The FDCPA is "designed to provide information that helps consumers choose intelligently" about their debt-management choices. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009); *Spuhler*, 983 F.3d at 286 ("The FDCPA envisions that debtors will use accurate, non-misleading information in choosing how to respond to collection attempts and how to manage and repay their debts"). One way the FDCPA achieves this goal is by giving debtors a right to submit written requests for verifying information about a debt. 15 U.S.C. § 1692g. Another is by prohibiting "abusive debt collection practices" and allowing debtors to sue collectors for "damages caused by misleading communications" that interfere with a debtor's ability to make informed debt payment decisions. *Mack*, 70 F.4th at 406. In *Mack*, the reason the money Mack spent responding to Frontline's letter did not confer standing is because there was nothing misleading about Frontline's letter. *Id*. Rather, Frontline's initial communication setting forth Mack's statutory right to request debt validation in writing was the sort of ordinary exchange of information between debtor and collector envisioned by Congress when it passed the FDCPA. *Id.* The second letter, however, from a different entity about the same debt was confusing and misleading. As a result, Mack's second response was

9

unnecessary and the associated postage purchase qualified as injury for standing purposes. *Id*. Congress may have anticipated debtors would incur some costs to preserve their rights, but "[m]oney damages caused by misleading communications from the debt collector are certainly included in the sphere of interests that Congress sought to protect." *Id*.

Here, Plaintiff's February 9, 2022 phone call with Defendant was the substantive equivalent of the first letter Mack received from Frontline: Plaintiff was informed that she was believed to owe a collectible debt, and she was told to submit a dispute in writing to preserve her right to dispute that debt and gain additional information.[1] Although Plaintiff claims that Defendant's statements to her were misleading, what she means is that she did not agree that a debt was owed. But, as is discussed above, nothing Defendant said to Plaintiff caused Plaintiff to do anything other than mail a dispute letter just like the plaintiff's first mailing in *Mack*. For these reasons, the Court concludes that the initial postage incurred by Plaintiff is no different than the initial postage the Seventh Circuit concluded did not give rise to standing in *Mack*.[2]

The cases cited by Plaintiff in support of the proposition that the costs of mailing a dispute letter support standing are all from outside the Seventh Circuit, pre-date *Mack,* and do not involve standing analysis under the FDCPA. *See, e.g., Pinson v. JP Morgan Chase Bank, N.A*., 942 F.3d 1200, 1207 (11th Cir. 2019) ("We have held that the time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA

---

[1] The Court has reviewed the call submitted by Plaintiff as Exhibit B, and the tone between the parties is exceedingly cordial. Defendant's phone representative tells Plaintiff: "There is a way to dispute; you say you have a dispute. On the letter you got, there should be an address. A PO Box address … that's how you would go through the process to dispute it. You send it in writing and after that they will take that information to our client who actually did send it and they will go over that…" 1:25 – 2:00.

[2] The Court also is not persuaded by Plaintiff's argument that this case is distinguishable from *Mack* because Defendant misled Plaintiff by telling her that it would respond to her letter. After all, the same thing happened in *Mack*. It was not the lack of a response to the letter in *Mack* that the Seventh Circuit found compelling, but rather the second debt collection attempt from a different company that lead to the injury significant enough to confer standing.

claim."); *Nelson v. Experian Info. Solutions*, 2022 WL 193010, at *6 (N.D. Ala. Jan. 10, 2022) (FCRA claim); *Hernandez v. Equifax Info. Servs. LLC*, 2019 WL 11343464, at *13-14 (N.D. Ga. Oct. 11, 2019) (FCRA claim). Because *Mack* is binding precedent, the Court therefore cannot and will not follow them.

## CONCLUSION

Plaintiff's only asserted bases for standing are her tea and postage purchases, neither of which qualify as an injury in fact. Plaintiff therefore has not established her standing to sue and her claims under the FDCPA are dismissed without prejudice for lack of subject matter jurisdiction. Plaintiff's ICFA claims are also dismissed without prejudice, as the Court's lack of subject matter jurisdiction means it has no authority under 28 U.S.C. § 1367(a) to adjudicate Plaintiff's claims brought under state law. *See Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018). Finally, because the parties' remaining summary judgment arguments are predicated on Plaintiff's standing, the Court will not address them.

Dated: January 31, 2025

                                                    APRIL M. PERRY
                                                    United States District Judge